PEOPLE v FIELDS

1. CRIMINAL LAW—INDICTMENT AND INFORMATION—CIGARETTES—
PROSECUTOR'S REMARKS—TAX EVASION—SURPRISE.

Reference by a prosecutor to tax evasion in a trial for possession,
acquisition, and transportation of cigarettes without a license
did not constitute reversible error where the information con-
tained the penalty and enforcement provisions of the general
cigarette tax act and reference to this act together with the
language contained therein provided reasonable notice to de-
fendants regarding the tax aspects of the case so as not to have
caused surprise (MCLA 205.509, 767.57).

2. CRIMINAL LAW—CIGARETTES—PROSECUTOR'S REMARKS—TAX EVA-
SION—MOTIVE—PRESERVING QUESTION.

It was permissible in a trial for possession, acquisition, and
transportation of cigarettes without a license for the prosecutor
to comment on tax evasion to show defendants' motive and to
point out the rationale underlying the statutory requirement,
and where no objection was made to any portion of the prosecu-
tor's argument as being misleading, any error was not saved for
review.

3. CRIMINAL LAW—WITNESSES—SEQUESTRATION—DISCRETION.

Sequestration of witnesses in a criminal trial is within the
discretion of the trial court.

4. CRIMINAL LAW—WITNESSES—SEQUESTRATION—DISCRETION—PRE-
SERVING QUESTION—PREJUDICE.

Neither judicial abuse nor error resulted from the introduction of

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 51 Am Jur, Taxation § 10.
[3, 4] 20 Am Jur 2d, Courts § 69.
[5] 58 Am Jur, Witnesses § 570.
[6] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[7] 29 Am Jur 2d, Evidence § 320 *et seq.*
    Admissibility, at trial of criminal case, of evidence of defendant's
    criminal acts other than those charged, 93 L Ed 185.
[8] 29 Am Jur 2d, Evidence §§ 555–557, 582 *et seq.*
[9] 29 Am Jur 2d, Evidence §§ 539, 540.

testimony of a rebuttal witness who was permitted to testify after the parties in a criminal trial agreed to sequester witnesses where the witness remained in the courtroom after he had testified because conditions were altered which allowed the trial court to rescind the earlier exclusion order and permit the testimony to be introduced to rebut a claim of innocent mistake, and the defendants failed to object, and failed to demonstrate any resulting prejudice.

5. CRIMINAL LAW—EVIDENCE—LEADING QUESTIONS—DISCRETION.

The admission of leading questions in a criminal trial is discretionary with the trial court.

6. CRIMINAL LAW—APPEAL AND ERROR—ISSUES—WAIVER.

Consideration of an issue on appeal in a criminal case is waived where the issue is not developed either by reference to the record, citation to controlling authority, or reasoned argument.

7. CRIMINAL LAW—EVIDENCE—SIMILAR ACTS.

Evidence regarding acts similar to the crime charged may be introduced to show a defendant's motive, intent, absence of mistake or accident, or *modus operandi* (MCLA 768.27).

8. CRIMINAL LAW—EVIDENCE—ADMISSIONS—VOLUNTARINESS—PRIOR HEARING.

Testimony amounting to admission by defendants was properly allowed into evidence without a prior hearing to determine voluntariness in the absence of a claim of involuntariness where the record clearly indicated that a *Miranda* warning was given, and where defense counsel made no attempt to attack the validity of the assertion that such statements were in fact made.

9. CRIMINAL LAW—EVIDENCE—ADMISSIONS—INSTRUCTIONS TO JURY— SUA SPONTE INSTRUCTIONS—HARMLESS ERROR.

Failure of a trial court *sua sponte* to limit the admissions of codefendants as reflective of their own guilt without implicating others allegedly involved was harmless error beyond a reasonable doubt where the quantum of evidence submitted as to the convicted defendant's guilt persuades the Court of Appeals that such defendants were consciously involved in an illegal enterprise and substantially more than tenuous or circumstantial evidence had been introduced against such defendants apart from the admissions.

Appeals from Wayne, Roland L. Olzark, J. Submitted Division 1 March 12, 1973, at Detroit.

(Docket Nos. 14301, 14302.) Decided September 26, 1973.

Albert R. Fields and Clarence V. Fields were convicted of possession, acquisition, and transportation of cigarettes without a license or permit. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Edward R. Wilson,* Assistant Prosecuting Attorney, for the people.

*Joseph A. Colombo,* for defendant Albert R. Fields.

*Cass S. Jaros,* for defendant Clarence V. Fields.

Before: Fitzgerald, P. J., and V. J. Brennan and O'Hara,* JJ.

Fitzgerald, P. J. Defendants Albert and Clarence Fields were tried jointly with codefendants Irene Wyrembelski and Joanna Carson and convicted by a jury of possession, acquisition, and transportation of cigarettes without a license or permit.[1]

At trial, State Police detectives and State Treasury agents testified as to the facts and circumstances leading up to defendants' arrest and conviction. Proceeding on previous knowledge and surveillance of the Fields, the police witnesses

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 205.509; MSA 7.411(9).

followed Joanna Carson and Clarence Fields from Michigan to Angelo Brothers Wholesale Grocers located in Winston-Salem, North Carolina. Fields' vehicle, a camper-box-fitted pickup truck, entered the Angelo establishment empty with windows uncovered and emerged twenty minutes later, window covers drawn and apparently heavily laden. The defendants were followed on their return route along Highway I-75 into Southgate, Michigan. Fields dropped Joanna Carson off at her house and proceeded to the home of his son, Albert Fields. Albert joined Clarence in the truck, drove his father home, and returned to his house alone, where he was met by Irene Wyrembelski and two young boys. Fields and the two boys drove to the home of Joanna Carson, Wyrembelski following in a separate car. Soon after their arrival, Fields, Carson, and the two boys were observed unloading cartons of cigarettes. The law enforcement officials approached the truck and examined the cartons, observing that none bore any evidence of Michigan tax payment. A search of the Michigan Department of Treasury cigarette wholesaler license records disclosed that none of the defendants were licensed to sell or distribute cigarettes. At this point the detectives and agents placed defendants under arrest.

Both defendants testified. Clarence Fields admitted purchasing the cigarettes from Angelo Brothers, Inc., in late August, stating that it was his understanding that a supply of cigarettes must be on hand prior to making application for a license.[2] It was defendants' plan to sell the cigarettes in conjunction with the auto parts supply company he owned, yet he had inexplicably marked "yes" to

---

[2] Clarence Fields gave conflicting testimony as to whether application for the license was made before or after his arrest.

the license application question, "Do you maintain an established place of business where substantially all of the business is the sale of cigarettes?"

Albert Fields corroborated much of his father's testimony. He also indicated their intent to operate a wholesale cigarette business in a portion of their auto parts store. The cigarettes were stored in Joanna Carson's air-conditioned basement to keep them fresh until receipt of the license. He further stated the cigarettes were purchased in North Carolina because they were cheaper. Defendant admitted that he had made no arrangements for developing customers, a regular Michigan supplier, or any other preparations such as stationery, purchase orders, or invoice forms.

A verdict of guilty as charged was returned as to all four defendants. Following denial of defendants' motions for new trial, the case against Irene Wyrembelski was dismissed due to lack of evidence. Following an order granting defendant Carson's motion for new trial, a *nolle prosequi* order was filed regarding the case against her. Clarence and Albert Fields were sentenced to two years probation with the special conditions that each cease and desist any association with co-defendants Carson and Wyrembelski, in addition to paying court costs of $330.

It is first alleged that the prosecutor misled defendants and the jury with respect to the nature and elements of the crime charged. Defendants argue that continued reference to tax evasion, a charge not contained in the information, together with prosecutorial language amounting to testimony of defendants' guilt, constitute reversible error. We find this contention without merit. The information charged defendants with violation of MCLA 205.509; MSA 7.411(9), which provides in part:

"(a) Any person not a licensee in control or in possession of any cigarettes contrary to any provision of this act, or who offers to sell or does sell any cigarettes to others for purposes of resale without being licensed to do so under this act, shall be deemed to have possession of such cigarettes as an unclassified acquirer and shall be personally liable for the *tax* imposed by this act, plus a penalty of 100%.

"(b) Any person who possesses, acquires, transports or offers for sale any cigarettes contrary to any provision of this act, wherein the wholesale price of the cigarettes involved amounts to or exceeds the amount of $50.00, shall be guilty of a felony and upon conviction thereof shall be fined not more than $5,000.00 or imprisoned for not more than 5 years, or both."

The information contained the penalty and enforcement provisions of the general cigarette tax act. Reference to this act, together with the language contained therein, provided reasonable notice to defendants regarding the tax evasion aspects of the case so as not to have caused surprise. MCLA 767.57; MSA 28.997. Defendants were not unaware of the need to pay taxes in connection with cigarette sales. Defendants suffered no prejudice, nor has a miscarriage of justice resulted from language contained in the information or spoken by the prosecutor in fully apprising defendants of the offense charged. *People v Owens,* 37 Mich App 633; 195 NW2d 36 (1972); MCLA 767.76; MSA 28.1016. We think it permissible for the prosecution to comment on tax evasion to show defendants' motive and to point out the rationale underlying the statutory requirement. We further note that objection was not made to any portion of the prosecutor's argument as being misleading, and thus any error was not saved for review. *People v Martin,* 1 Mich App 265; 135 NW2d 560 (1965).

Defendants contend the trial court abused its

discretion in permitting a rebuttal witness to testify after the parties agreed to sequester witnesses where the rebuttal witness remained in the courtroom after he had testified. We do not so find. It is well settled that sequestration in a criminal trial is within the discretion of the trial court. *People v Sawicki,* 4 Mich App 467, 473; 145 NW2d 236, 239 (1966); 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 604, pp 781–782. Defendants cite no authority for their position, nor do they demonstrate any resulting prejudice to defendant. Conditions were altered which allowed the trial court to rescind the earlier exclusion order and permit the testimony of an agent to be introduced to rebut the claim of innocent mistake. Defendants' failure to object and the lack of resulting prejudice persuade us that neither judicial abuse nor error resulted from the introduction of the testimony.

Defendants claim prejudicial error occurred when the prosecutor asked leading questions and failed to lay a proper foundation for police witnesses on direct examination. The admission of leading questions is discretionary with the court[3] and the record discloses no clear abuse. Moreover, this issue is not developed either by reference to the record, citation to controlling authority, or reasoned argument. Consequently, further consideration on appeal is waived. *People v Fuston Thomas,* 36 Mich App 23, 26; 193 NW2d 189, 190 (1971), *People v Williams,* 29 Mich App 420, 426; 185 NW2d 435, 438 (1971).

The admission of testimony and photographs as evidence of similar acts is believed by defendants to constitute reversible error. MCLA 768.27; MSA 28.1050 permits the showing of acts similar to the crime charged to show defendants' motive, intent,

---

[3] MCLA 768.24; MSA 28.1047.

absence of mistake or accident, or *modus operandi.* The rebuttal testimony of agent Bushor, supported by corroborating photographs, places defendant Albert Fields and Irene Wyrembelski in knowledgeable possession of contraband cigarettes from Angelo Brothers of North Carolina in front of Clarence Fields' auto parts store on July 13, 1971. This occurred more than six weeks prior to the late August journey, under surveillance, to North Carolina. However, Albert Fields' testimony revealed that he worked with his father in the auto parts business. He and his father had planned to enter the cigarette supply business and he knew of his father's attempt to obtain a license authorizing the sale of cigarettes. Contradicting the rebuttal testimony offered by the prosecution, Albert Fields testified he had never seen cases of cigarettes at Mrs. Carson's house or in his father's possession prior to September 1, 1971. Defendant Clarence Fields previously testified that he had never been to Angelo's Wholesale in Winston-Salem, North Carolina prior to September 1, 1971. We are aware that mere association alone is not sufficient to implicate individuals with others involved in a crime. *People v Blakes,* 4 Mich App 13; 143 NW2d 769 (1966). Yet the evidence presented by the prosecution supports their theory that both defendants were associated in a common scheme to smuggle cigarettes into Michigan for resale without paying the Michigan cigarette tax. An examination of the circumstances involving Albert Fields demonstrates an inconsistency with the position taken by his father, Clarence. These inconsistencies are sufficient to be relevant in contradiction of that position on rebuttal in light of all the circumstances. Though Clarence denied any dealings with Angelo Brothers prior to the transaction leading to his conviction, both he and Al-

bert testified to their involvement in a contemplated cigarette-supply venture. The close association between Clarence and Albert Fields in their existing auto parts concern and Albert's admitted awareness of the preliminary steps taken by his father to organize a "sideline" cigarette business belie Clarence's categorical denial of any prior cigarette dealings in North Carolina with the Angelo Brothers.

From these facts, a reasonable inference can be drawn connecting the cigarettes in Albert Field's possession at his father's store on July 14, 1971 to the supply of cigarettes obtained by his father on August 31 as a common continuous enterprise. To deny the jury an opportunity to consider these circumstances by discounting them as mere coincidence would constitute an unreasonable exclusion of relevant evidence. Agent Bushor's testimony contained evidence sufficiently related to the principal charge to establish relevance while indicating an absence of the mistaken identity alleged by defendant Albert Fields. MCLA 768.27; MSA 28.1050. The similarity between the photograph of Albert Fields with contraband cigarettes and the subsequent incident in which both Fields admit of their complicity render the evidence admissible. Further, the absence of a request for limiting instructions restricting the evidence to the guilt of Albert Fields and Irene Wyrembelski does not require reversal. *People v McPherson,* 38 Mich App 534; 197 NW2d 173 (1972); *People v Harper,* 39 Mich App 134; 197 NW2d 338 (1972).

The next issue raised by defendants is whether testimony amounting to admissions was properly introduced without a prior hearing to determine the voluntariness of the testimony. Defendants' contention that a hearing on this question was

required to be held is without merit in the absence of a claim of involuntariness. *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965). The record clearly indicates that a *Miranda* warning was given and defense counsel made no attempt to attack the validity of the assertion that such statements were in fact made.

In connection with the above issue, there remains the final question as to whether reversible error occurred where the trial court failed to *sua sponte* limit the admissions of codefendants as reflective of their *own* guilt without implicating others allegedly involved. Defendants argue that their failure to request a *Walker* hearing does not alter the fact that the implicating testimony was a complete surprise to them. The following testimony was received by Detective Hagstrom:

"*A.* She made four admissions: Number one, she did admit that she had made trips prior to this trip with Mr. Clarence Fields to North Carolina.

*          *          *

"*The Court:* All right, just restrict it then to what she said about herself.

"*A.* Number, one, she advised us that she had made prior trips to North Carolina for the purpose of obtaining cigarettes and bringing them back into Michigan. Number two, she advised us that the cigarettes had been stored in her basement prior to this event of September 1. And third, that she had engaged in the disposal of these prior cigarettes to persons in the down river area."

No existing authority considers it absolute reversible error where the trial court fails to give a limiting instruction restricting admission testimony to the declarant alone. We are aware of a recent decision[4] from this Court which found re-

---

[4] *People v Berryman,* 43 Mich App 366; 204 NW2d 238 (1972).

versible error in the trial court's failure to *sua sponte* limit the extrajudicial admissions of a codefendant to the declarant. In that case, the evidence against one codefendant was tenuous, entirely circumstantial, and not connected with the planned conspiracy. Undeniably, it would have been appropriate for the trial court in the instant case to strike the testimony of defendant Carson admitting to having traveled to North Carolina on previous occasions *with Clarence Fields* for the purpose of transporting cigarettes to Michigan for resale. The quantum of evidence submitted as to defendants' guilt persuades us that both defendants were consciously involved in an illegal enterprise. Substantially more than tenuous or circumstantial evidence has been introduced against them which distinguishes the instant case from *Berryman.*

We do not believe the admissions against defendants were sufficiently damaging to warrant reversal. Considering the testimony adduced in its entirety, we find the failure of the court to issue limiting instructions was harmless error beyond a reasonable doubt consistent with the standard set out in *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972).

Affirmed.

All concurred.